[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this contested dissolution of marriage action, the plaintiff seeks a dissolution of marriage, custody, child support, alimony, a division of assets and other appropriate equitable relief. In fashioning its orders the Court is cognizant of the provisions of Connecticut General Statutes46b-81 and 46b-82, and gives consideration to the criteria set out in said statutes. The findings and orders of the Court are as follows:
The parties intermarried at Wethersfield, Connecticut on February 22, 1980. They have resided continuously within Connecticut for longer than one year next preceding the date of the complaint.
There are three minor children issue of the marriage, to wit:
 Kathryn Williams, born October 27, 1980 Michael Williams, born January 21, 1982 Maura Williams, born January 10, 1985
Neither party is receiving welfare assistance from state or local governmental agencies.
This marriage is irretrievably broken and has been for years. CT Page 633
The husband has a dominant personality and the wife felt left out of any decision making which affected her and the children. The husband has belittled the wife in front of the children, has tried to control finances, parenting of the children and most marital decisions. The wife's feeling of self-worth was negatively impacted and, although she had known depression before the marriage, the stress of coping with the marital problems has exacerbated her depression.
This was the wife's first marriage and she was thirty-eight years old at the time. The husband, who had been married before, is ten years older.
He is a registered pharmacist and he owned his own drugstore together with several apartment buildings. When they married, he told the wife he was worth between one and two million dollars. For a short time at the beginning of their marriage the husband's two children from his prior marriage lived with them. The wife owned a condo at the time which was sold, netting $18,000.00. That money was "borrowed" by the husband who later told the plaintiff it was considered by him to be family money and, as such, was not repayable.
When the wife started this action in 1991, the husband was irate and told her there would be a war or a battle between them. Both parties continue to live in the jointly owned marital home (albeit separate and apart from each other with the wife sleeping on a couch). In October or November of 1992, the husband stopped making mortgage payments on the home and a foreclosure action has been brought.
At least two motions for contempt have been brought against the husband, which resulted in orders against him, including orders to pay counsel fees.
From the long history of bitter relationships between the parties the Court finds the marriage to be broken down irretrievably and orders that it be dissolved. Other facts will be discussed in relation to the specific orders entered.
Custody:
In determining custody the paramount concern is the best interests of the children, Hall v. Hall, 186 Conn. 118, (1982). On this issue, in addition to the testimony of the parties, the CT Page 634 Court was provided with the testimony and report of Anne M. Phillips, a clinical psychologist who did a custody evaluation, the testimony and report of John Bell, a counselor with the Family Relations office, the testimony and report of Dr. Richard Miller, a psychiatrist treating the wife for depression, and Barbara Ripa, principal of the Ellington Middle School where Michael and Kathryn are students. Attorney Richard Dyer, the court appointed attorney for the minor children also provided the Court with his recommendations made in his capacity as attorney representing the children.
Dr. Phillips recommended that the mother be the sole custodial parent because she believed, on balance, the mother would be the better parent in being better able to address their emotional needs. The recommendation of Mr. Bell (Family Relations) is consistent with that of Dr. Phillips.
It is clear to the Court that co-parenting or a joint custodial arrangement is unworkable in this case. The mother has been the primary nurturing parent for the children. For most of the marriage, the husband was busy at work. In addition to the drug store and his investments, he sold computers, insurance (and is now licensed to sell securities also), and played basketball on a regular basis. He has become more actively involved with the children since this action started and while that is commendable regardless of the motivation, the mother has a history of providing nurturing to these children, has generally run the family home including the more mundane aspects of that responsibility. The Court also believes that the mother is far more likely to facilitate visitation orders and less likely to circumvent orders concerning visitation, See Hall v. Hall, supra, at 124, Seymour v. Seymour, 180 Conn. 705, 711 (1980).
Attorney Dyer's suggestion that the children live separately with each parent for a period of several months with an up-dated custody evaluation to follow, would be unlikely to end this dispute. The situation as it exists is barely tolerable and the Court is convinced that the stability of the children will be better served by clarifying the issue of custody without further delay. The husband's argument that Mrs. William's depression presents a potential threat to the safety of the children is unfounded and uncorroborated by any evidence. She has always been able to appropriately care for the children. She presently works as a licensed practical nurse in a local nursing home. Despite the great stress in her life especially since 1991, her CT Page 635 depression is controllable with minimal medication, and she will likely be far less stressed when this matter is finalized. Her therapist describes her as strong and conscientious, and generally as healthy mentally as the average person.
For these reasons sole custody of the minor children is awarded to the wife. The husband shall have liberal but reasonable visitation, pursuant to a specific visitation schedule between the parties. If the parties cannot agree to a visitation schedule, either may move the Court to do so.
Both parties shall attend the parenting education program required by P.A. 93-359 and shall complete the necessary application forms at the Court Clerk's office within 14 days of this decision.
Child Support:
The husband shall pay child support in the amount of $510.00 per week in accordance with child support guidelines, to be secured by a wage garnishment.
Alimony:
The husband has a far greater ability to earn than the wife. As noted above, he is a licensed pharmacist, a licensed securities salesman and has sold both computers and insurance part-time. He can easily earn $27.00 per hour as a drug store manager, and more if he works as a pharmacist. In the past he owned two drug stores and several apartment houses, as well as an interest in a shopping center. In short, he has considerable entrepreneurial and professional skills. Indeed, in his testimony he conceded that he has little or no trouble making money. Mrs. Williams is a licensed practical nurse working part-time at a local nursing home. While she could probably extend her hours in the future, it will probably take some time for her to become stabilized in a new home, to settle the children into their new surroundings, and to deal with the turmoil all that will entail.
Since the husband's finances are, at this time, clouded by the fact that he has a bankruptcy matter pending, the Court deems it appropriate to protect the financial orders it is entering and will order the husband to pay $1.00 per year as periodic alimony through the year 2003. This coincides with the eighteenth CT Page 636 birthday of the youngest child. The husband shall provide the wife with copies of income tax returns for each year beginning with the calendar year 1993, within 14 days of filing, and shall provide her with copies of any requests for extension of time to file said returns also within 14 days.
The Court anticipates that the wife will realize approximately $85,000.00 from the sale of real estate being assigned to her, (based on value of $195,000.00 with a first mortgage of $107,000.00), and would consider as one of the circumstances which would justify a request for a modification of alimony by the wife, any substantial deviation from the anticipated equity. There may be attachments against the husband's interest in the property, and the funds available may be adversely affected by a forced foreclosure by sale. Again it is the intention of the Court that the orders for periodic alimony protect the financial orders being entered.
Real Estate:
Pursuant to the provisions of Connecticut General Statutes46b-81 (a), the Court assigns to the wife any interest the husband may have in real estate known as 105 Tripp Road Ellington, Connecticut. The wife shall assume liability for the first mortgage on said property and shall hold the defendant harmless therefrom. The husband shall vacate the premises forthwith.
Health Insurance:
The husband shall provide health insurance (Blue Cross-Blue Shield or substantial equivalent) for the minor children. The parties shall share equally any unreimbursed medical, dental, orthodonture and ophthalmological bills. The provisions of Connecticut General Statutes 46b-84c shall apply. If such medical insurance is available to the wife through her employment, she shall make it available if the husband chooses to reimburse her for the costs of providing said insurance.
Life Insurance:
The husband shall obtain a $250,000.00 life insurance policy naming the wife as irrevocable beneficiary until the youngest child reaches eighteen years of age and shall provide the wife with proof of same, including premium payments. CT Page 637
Attorneys Fees:
The husband shall pay previously ordered counsel fees of $390.00 (ordered on May 10, 1993) and $1,000.00 (ordered on June 1, 1993), within 45 days.
The parties shall share equally the attorney's fee for Attorney Dyer as attorney for the children, within 45 days.
Other:
The husband shall be responsible for the debt to the Derby Savings Bank and hold the wife harmless therefrom.
Klaczak, J.